UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHAEL H., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-CV-1466-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Michael H. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF. No. 23).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 14, 17.[1] Plaintiff also filed a reply. *See* ECF No. 22. For the reasons set forth below, Plaintiff's motion (ECF No. 17) is **DENIED**, and the Commissioner's motion (ECF No. 14) is **GRANTED**.

---

[1] The Court notes that the docket in this case reflects several amended motions for judgment on the pleadings and briefs in support. Plaintiff's original motion (ECF No. 12) and brief in support (ECF No. 13) were filed on June 13, 2021. Thereafter, Plaintiff filed an amended motion (ECF No. 17) and brief in support (ECF No. 18) on October 13, 2021, in response to which the original motion (ECF No. 12) was terminated. Meanwhile, the Commissioner filed its motion for judgment on the pleadings and brief in support on August 12, 2021 (ECF No. 14), followed by an amended brief in support on October 19, 2021 (ECF No. 21). Thus, for purposes of the decision, ECF No. 14 (the Commissioner's motion) and ECF No. 17 (Plaintiff's motion) are the "live" motions in this case. Furthermore, in light of the parties' amended briefs in support of their respective motions, the Court will only consider the latest versions of the supporting briefs, which is Plaintiff's brief filed on October 13, 2021 (ECF No. 18) and the Commissioner's brief filed on October 19, 2021 (ECF No. 21).

## BACKGROUND

On August 6, 2018, Plaintiff protectively filed a Title II application for a period of disability and DIB, alleging disability beginning October 10, 2017 (the disability onset date), due to: "(1) PTSD; (2) Major Depressive Disorder; (3)Anxieties; (4) Concussions/TBI; (5) Hearing Loss/ Tennitis [*sic*]; (6) sleep apnea; and (7) high blood pressure." *See* Transcript (Tr.) 168-74, 197. Plaintiff's claims were denied initially on October 18, 2018, then again on reconsideration on January 8, 2019. Tr. 68-104. Thereafter, Plaintiff requested a hearing. Tr. 116-17.

Plaintiff's hearing was held before Administrative Law Judge Charles Shinn (the "ALJ") on December 10, 2019, in Akron, Ohio. Tr. 12. Plaintiff appeared and testified at the hearing and was represented by Michael A. Liner, an attorney. *Id*. Lynn S. Smith, an impartial vocational expert ("VE") also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on January 10, 2020, finding that Plaintiff was not disabled. Tr. 12-30. On August 19, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

2

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."

*Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his January 10, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

2. The claimant has not engaged in substantial gainful activity since October 10, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: Obesity, Traumatic Brain Injury, Essential Hypertension with Left Ventricle Hypertrophy, Degenerative Disc Disease of the Cervical Spine, Carpal Tunnel Syndrome of the Right Upper Extremity, Depressive Disorder, Anxiety Disorder and Post-Traumatic Stress Disorder ("PTSD"). (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[2] except the claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant can frequently balance, stoop and crouch. The claimant can occasionally kneel and crawl. The claimant can frequently handle, finger and feel with the right upper extremity. The claimant must avoid workplace hazards such as unprotected heights or exposure to dangerous moving machinery. The claimant can perform simple routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety or welfare of others. The claimant can perform work that does not involve piece rate work or assembly line work. The claimant can occasionally interact with others.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 17, 1969 and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2017, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 12-30.

Accordingly, the ALJ determined that for a period of disability and disability insurance benefits protectively filed on June 20, 2018, Plaintiff is not disabled under sections 216(i) and 223(d) of the Act. Tr. 30.

## **ANALYSIS**

Plaintiff alleges four points of error. Plaintiff argues that: (1) the ALJ erred by relying upon jobs identified by the VE to fulfill his step five burden and failed to resolve a conflict in the vocational evidence; (2) the ALJ's RFC was not supported by substantial evidence, primarily because of the ALJ's failure to properly evaluate the medical opinion evidence; (3) the ALJ's credibility finding is flawed because the ALJ failed to consider Plaintiff's strong work history; and (4) the ALJ's decision is constitutionally defective because the Commissioner, from whom the ALJ and the Appeals Council derive their authority, was not constitutionally appointed. *See* ECF No. 18 at 3-32.

In response, the Commissioner first argues that Plaintiff's constitutional argument does not entitle him to a rehearing of his disability claim. *See* ECF No. 21 at 6-19. With respect to Plaintiff's substantive challenges to the ALJ's decision, the Commissioner argues that the ALJ expressly considered Plaintiff's post-hearing challenges to the vocational evidence and reasonably relied on VE testimony to conclude that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform in light of his RFC and other vocational factors. *See id*. at 36-44. The Commissioner also argues that the ALJ appropriately considered Plaintiff's mental impairments and his subjective complaints, and the ALJ's RFC finding was supported by substantial evidence. *See id*. at 19-36.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

**A.  Substantial Evidence Supports the ALJ's RFC Determination.**

As noted above, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence. *See generally* ECF No. 18. Specifically, Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence and failed to properly consider Plaintiff's subjective complaints. *See id*.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-

5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole);

*Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927. Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claim on August 6, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

### 1. The ALJ Appropriately Considered Plaintiff's Mental Impairments.

Plaintiff first challenges on the ALJ's consideration of the opinions of record, particularly the opinions of treating psychiatrist, Amal Rubai, M.D. ("Dr. Rubai"). *See* ECF No. 18 at 17-27. Plaintiff initiated mental health treatment with Dr. Rubai, Ronald Copen, LISW-S (Mr. Copen"), and other providers at Canton Community Based Outpatient Clinic ("Canton") in August 2018. Tr. 489-94. Plaintiff argues that the ALJ did not properly evaluate Dr. Rubai's October 2019 opinion, in which Dr. Rubai opined that Plaintiff had marked-to-extreme mental limitations in all four mental areas of functioning; would be absent from work one day per week; and would be off task one or two days per week due to his mental impairments (Tr. 708-09). *See* ECF No. 18 at 18-27. According to Plaintiff, Dr. Rubai's opinion was consistent with, and supported by, the evidence and met Plaintiff's burden to provide evidence demonstrating that he is disabled. *See id*.

The Court notes that Plaintiff does not challenge the ALJ's consideration of his physical impairments; thus, the Court declines to address the ALJ's physical RFC findings in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed and weighed the opinion evidence and the other evidence of record under the Commissioner's regulations. Tr. 26. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). Furthermore, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record as a whole. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

11

Here, in reaching the RFC finding, the ALJ carefully and thoroughly considered Plaintiff's treatment notes, as he is permitted to do. Tr. 19-22. First, the ALJ discussed that Plaintiff sought treatment for depression, anxiety, and PTSD prior to the alleged onset date, though he stopped receiving dedicated mental health treatment for some time after completing a PTSD study in November 2017. Tr. 25, 558. Plaintiff reentered mental health treatment in August 2018, when he initiated psychiatric treatment with Dr. Rubai. Tr. 25, 489-94. At the initial appointment, Plaintiff disclosed that he worked part time at Valor Home (a VA support facility) and prior to that, he had worked at a facility called Oriana House, where he was fired because "they didn't like [his] opinion." Tr. 491. Plaintiff presented as anxious with irritable mood and fair insight and judgment; however, he was cooperative; he was able to laugh; his thought processes were organized; and his thought content was normal. Tr. 25, 491. Plaintiff also recounted his treatment, mental health, and vocational history without apparent difficulty. Tr. 489-91.

Plaintiff started counseling with Mr. Copen in October 2018. Tr. 25, 682-83, 687. Plaintiff presented with adequate grooming, logical thought process, normal thought content, and his memory and attention were intact. Tr. 25, 682-83. During the October 2018 visit, Plaintiff was "very angry" but stated he was "feeling somewhat better" after talking to the counselor. Tr. 682. Mr. Copen assessed Plaintiff with "passive/nonspecified homicidal ideation" with no identified target or victim.[3] Tr. 683.

The ALJ also considered that subsequent treatment notes through September 2019 with Dr. Rubai and Mr. Copen demonstrated at times disheveled appearance, and somewhat anxious and depressed mood. Tr. 25, 775-76, 788-89, 809-11, 818-19, 877-78, 887-88, 894, 922-24. Nonetheless, Plaintiff regularly presented with appropriate hygiene and grooming, exhibited

---

[3] The Court notes that the ALJ erroneously cited Mr. Copen's note from October 2018 as Plaintiff presenting with "passive suicidal ideation," rather than homicidal ideation. Tr. 25 (citing Tr. 683).

normal speech, was alert and cooperative, and had normal thought process and content, denying suicidal ideation. *Id*. During this time, Plaintiff reported external stress due to weight loss efforts and a temporary separation from his wife. Tr. 775, 887, 894. Plaintiff was still working part time as a support worker at Valor Home and was seeing improvements in anxiety by training his service dog. *Id*. Moreover, and despite any anxious and depressed mood, Plaintiff continued to look for work because he wanted to work more often than part-time. Tr. 775-76, 810-11, 818-19.  Plaintiff had testified that he only works part-time because his job is "not offered as a full-time position." Tr. 47.

The ALJ also noted Plaintiff's February 2019 evaluation by PTSD specialist and clinical psychologist Lindsey Pepper ("Ms. Pepper"). Tr. 25, 909-14. Plaintiff actively participated in the interview; understood the structure of the session; and remained "interested and motivated to engage in treatment." Tr. 909. Plaintiff detailed his military and family history, mental health symptoms and history, current relationships, daily activities. Tr. 909-13. He reported that he enjoyed playing amateur hockey with others. Tr. 913. He also reported working as a support worker at Valor Home, though "he believe[d] this job [was] below his qualifications." *Id*. Plaintiff was timely to the session, and casually dressed, with good grooming and hygiene, despite anxiety and tearfulness. *Id*. Though guarded and anxious, Plaintiff was alert and responsive. Tr. 913. As the ALJ noted, Plaintiff had to be redirected at times to answer questions, but otherwise demonstrated logical and goal-oriented thought processes, normal speech, and coherent and relevant thought content. Tr. 25, 913. Ms. Pepper determined that Plaintiff did not meet the criteria for PTSD symptoms and was not qualified for trauma processing treatment. Tr. 913.

As the ALJ also noted, by October 2019, Plaintiff demonstrated some improvement, noting that he still had some anxiety, but overall felt better having lost some weight. Tr. 25-26, 761. During a counseling session in December 2019, Mr. Copen noted that this improvement continued

though Plaintiff "continue[d] to be frustrated by [his] ongoing job search." Tr. 1020. As the ALJ

noted, Plaintiff was nonetheless alert and attentive, with cooperative but anxious behavior, normal

speech and language, somewhat anxious but normal mood, and intact memory. Tr. 26, 1020.

Plaintiff reiterated his concern about obtaining employment, in response to which Mr. Copen

"reinforced [Plaintiff's] effort in areas of employment." Tr. 1020. Plaintiff also discussed his

primary stressors, which included losing weight and his difficulty finding a job (though, as noted

above, he continued to seek employment). Tr. 775, 776, 761, 762, 810, 811, 818.

In addition to considering Plaintiff's mental health treatment notes, the ALJ also considered

Plaintiff's treatment for TBI (traumatic brain injury), which was triggered by an injury during an

amateur hockey game in June 2018,[4] and its impact on mental functioning. Tr. 21-25, 876. For

instance, the ALJ considered TBI consults with nurse practitioner Elizabeth Treiber ("Ms.

Treiber") documenting that Plaintiff had normal attention, calm mood and normal Montreal

Cognitive Assessment ("MOCA")[5] scores, though his word finding improved further with

cognitive training. Tr. 21-23, 508, 511, 514, 675.

With respect to the opinion evidence, the ALJ first considered Dr. Rubai's October 2019

medical opinion in which Dr. Rubai opined that Plaintiff had marked to extreme limitations in all

four areas of mental functioning; would be absent from work one day per week and would be off

task for one to two days per week due to his impairments. Tr. 26, 708-09. Dr. Rubai's opinions

were largely rendered on a check-box form without any corroborating evidence *See Camille v.

Colvin*, 652 F. App'x 25 (2d Cir. 2016) (noting that such checkbox-type form opinions are of only

---

[4] Plaintiff also claims he has suffered multiple "concussions" over the years, including being hit in the head with a marble trophy in 1995. *See, e.g.*, Tr. 324, 423, 479, 514.

[5] The Montreal Cognitive Assessment was designed as a rapid screening instrument for mild cognitive dysfunction. It assesses different cognitive domains: attention and concentration, executive functions, memory, language, visuoconstructional skills, conceptual thinking, calculations, and orientation." U.S. Dept. of Veterans Affairs, Parkinson's Disease Research, Education and Clinical Centers, https://www.parkinsons.va.gov/consortium/moca.asp.

marginal evidentiary value). 20 C.F.R. § 416.927(c)(3). The ALJ reasonably found that the assessments of marked and extreme limitations, and off-task time, were not consistent with the evidence in the record, such as generally normal thought content and process, generally intact memory despite complaints of memory problems, and no evidence of attention deficits or difficulty handling stress despite reported agitation. Tr. 26. *See* 20 C.F.R. § 404.1520c(c)(2).

The ALJ also noted that Plaintiff demonstrated adequate focus to manage his treatment, including seeking increased treatment when he felt a worsening in his symptoms. Tr. 26, 378-623, 624-704, 909. For example, in September 2018, Plaintiff informed his providers that "now would be the perfect time" to change his blood pressure medication because he was almost out." Tr. 480-81. In October 2018, Plaintiff contacted Mr. Copen via telephone because he "was not doing well;" he was "full of rage;" and he was afraid he "might hurt someone."  Tr. 683. Mr. Copen told Plaintiff he would consult with psych ER before Plaintiff's next visit to further discuss options, to which Plaintiff agreed. *Id*.

Furthermore, despite instances of agitation, Plaintiff did not exhibit substantial and ongoing memory, attention, or focus issues. Tr. 26. In fact, Plaintiff demonstrated improvements on MOCA testing with cognitive training, despite the stressors noted above, including employment, financial, and marriage difficulties. *See, e.g.*, Tr. 508-09, 514-15, 670, 679, 1040. The record also indicates that Plaintiff had no difficulty with word finding (Tr. 509, 675) or difficulty maintaining attention (Tr. 508, 587, 602, 675).

Dr. Rubai's opinion that Plaintiff could have no interaction with the public; could not work in proximity of others; and could not get along with coworkers or peers (Tr. 708-09) is likewise undermined by Plaintiff's own self-reported activities. *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding the ALJ properly considered opinion of treating physician where the opined limitations were inconsistent with the doctor's own treatment notes and

plaintiff's self-reported activities of daily living). The ALJ noted that Plaintiff worked part-time as a support worker at Valor Home throughout the relevant period (Tr. 46-47, 1054-55); played amateur hockey (Tr. 589, 913); regularly went to the YMCA gym and attended group-fitness classes without reported difficulty (Tr. 772, 932, 994, 1030); and went on vacation to Vegas and on a cruise, also without reported difficulty interacting with others (Tr. 778, 780, 1012, 1038). Tr. 27-28. *See Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (ALJ properly discounted opinion inconsistent reported activities); *Williams v. Colvin*, No. 14-CV-947S, 2017 WL 3404759, at *6 (W.D.N.Y. Aug 9, 2017) ("[A]n ALJ may consider Plaintiff's daily activities, symptoms, and objective medical evidence together to determine whether a treating physician is credible.").

The ALJ also properly noted that the opinion was supported neither by Dr. Rubai's treatment notes, nor Mr. Copen's counseling notes. Tr. 26. *See* 20 C.F.R. § 404.1520c(c)(1) (supportability); *see also Marc W. v. Comm'r of Soc. Sec.*, No. 1:20- CV-1121 (WBC), 2021 WL 2435651, at *6 (W.D.N.Y. June 15, 2021) ("However, an ALJ may rely on inconsistencies between opinions and treatments notations in assessing opinion evidence"). While both providers observed Plaintiff had somewhat anxious mood at times, they otherwise observed him as cooperative, with normal thought content and process, intact memory, normal speech and language, alert and attentive functioning, and fair insight and judgement. Tr. 25-26, 761-62, 775-76, 788-89, 809-11, 818-19, 865, 877, 887 1020. The record also shows observations that Plaintiff made improvements, though he continued to have anxiety pertaining to difficulty with weight loss and his inability to find additional employment opportunities. Tr. 26-27, 761, 776, 811, 818-19, 877, 887, 1020. Despite Plaintiff's anxious and depressed mood, he continued to search for employment because he wanted to work more often than part time. Tr. 775-76, 810-11, 818-19, 1020. Plaintiff testified that he worked only part-time because his job is "not offered as a full-time position." Tr. 47.

Furthermore, nothing in the treatment records indicated that Plaintiff was counseled by his mental health treatment providers to stop his part-time work at Valor Home.

Additionally, the ALJ's mental RFC limitations are notably consistent with a large portion of Dr. Rubai's opinion. *See* Tr. 20, 708-09. For example, Dr. Rubai indicated that Plaintiff would have "unlimited or very good" ability to carry out very short and simple, as well as detailed, instructions; understand and remember very short and simple instructions; sustain an ordinary routine without special supervision; remember locations and work-like procedures; and ask simple questions or request assistance. Tr. 708-09. Dr. Rubai likewise opined that Plaintiff had "limited but satisfactory" ability to understand and remember detailed instructions, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and to be aware of normal hazards and take appropriate hazards. *Id*. Moreover, Dr. Rubai assessed that Plaintiff was "seriously limited, but not precluded" (defined on the form as limited in the ability to perform an activity 15% of the time) in the areas of performing activities with a schedule; managing regular attendance with appropriate punctuality; performing at a consistent pace without unreasonable rest periods; responding appropriately to criticism and instruction from a supervisor; and setting realistic goals and plans independent of others. *Id*. To the extent the ALJ's mental RFC reflects somewhat lesser restrictions than Dr. Rubai opined, the ALJ provided clear explanations, as discussed above. Tr. 26.

Citing various pieces of evidence not mentioned by the ALJ, as well as other evidence that the ALJ had specifically considered in finding Dr. Rubai's opinion consistent with the record, Plaintiff asserts this evidence indicates that Plaintiff was further restricted than the ALJ found and was totally disabled. *See* ECF No. 18 at 17-28. The Court disagrees. First, an ALJ's failure to cite specific evidence does not mean he did not consider it. *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal citations omitted)). Furthermore, while the ALJ

highlighted a few representative mental status examinations in support of his findings on persuasiveness, the ALJ was not required to repeat his discussion of the evidence when articulating why he found these opinions unpersuasive. Tr. 21-28. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App' x 109, 112 (2d Cir. 2010) (a court may "look to other portions of the ALJ's decision and to clearly credible evidence" to find that the decision was supported by substantial evidence); *see also Giovino v. Comm'r of Soc. Sec.*, No. 19-CV-122 HBS, 2020 WL 1909982, at *1 (W.D.N.Y. Apr. 20, 2020) (ALJ's decision should be "read as a whole."); *Sewar v. Berryhill*, No. 17-CV-6211L, 2018 WL 3569934, at *2 (W.D.N.Y. July 25, 2018)( "[A]n ALJ need not explicitly reiterate each and every shred of evidence in the record or risk remand"); *see also Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Additionally, Plaintiff's argument is largely based on his own self-serving interpretation of the evidence. Plaintiff himself acknowledges that the record showed "moderate anxiety and panic attacks in crowds, depression (mild), and poor concentration" along with a fair prognosis (*see* ECF No. 18 at 17-18), which further supports the ALJ's RFC finding and consideration of Dr. Rubai's opinion. *See Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (finding ALJ's RFC for simple tasks in a low-stress environment was supported by doctor's opinion that plaintiff was only mildly and moderately impaired by his depression and anxiety); *Marc W.*, 2021 WL 2435651, at *5 (finding mild to moderate restrictions accommodated by RFC limitations of simple, repetitive, and routine tasks, reduced public contact, and no work requiring fast pace or high production goals); *Gomez v. Comm'r of Soc. Sec.*, No. 18-CV-96-FPG, 2020 WL 1322565, at *4– 5 (W.D.N.Y. Mar. 20, 2020), (finding moderate to marked limitation in dealing with stress

accounted for in RFC limiting plaintiff to simple routine tasks); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-6804P, 2019 WL 1870814, at 4 (W.D.N.Y. Apr. 26, 2019) (finding marked limitations in interacting with others accounted for by limiting plaintiff to "tasks that do not require working in conjunction with others and predominately involve working with objects rather than people.").

Next, the ALJ reasonably considered and found persuasive the prior administrative findings of state agency psychological consultants Cindy Matyj, Ph.D. ("Dr. Matyj") (Tr. 79-81), and Cynthia Waggoner, Psy.D. ("Dr. Waggoner") (Tr. 96-98), who reviewed the record in October 2018 and January 2019, respectively. Tr. 27. As the ALJ noted, both doctors (including Dr. Waggoner who reviewed additional evidence that was not in the record at the time of Dr. Matyj's review), concluded that Plaintiff could recall short, simple instructions but would have difficulty recalling and understanding complex or detailed instructions; could perform work without a fast pace or set production goal; could interact with others on a superficial basis; and could adapt to a routine, predictable setting. *Id.*

The ALJ explained that he found these opinions persuasive, because they were consistent with other evidence the ALJ had considered. Tr. 27-28. For example, the ALJ noted that the record showed Plaintiff had instances of regular agitation, anxiety, and depression during treatment sessions, and that his agitation resulted in tangential thinking and the need to be redirected by his providers. *Id.* The ALJ also noted Plaintiff's reported memory difficulties, which was consistent with the consulting psychologists' opinion that Plaintiff would have difficulty with more than simple work and work around others. *Id. See* 20 C.F.R. § 404.1520c(c)(2) (consistency); *see also Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

The ALJ also acknowledged that neither psychologist had an examining or treating relationship with Plaintiff, and thus the question of supportability was not applicable. While Plaintiff contends this was error (*see* ECF No. 18 at 27-28), this argument fails. First, the ALJ's RFC finding is largely consistent with the Dr. Matyi and Dr. Waggoner's opinions. Additionally, the ALJ explained why he found these opinions persuasive. Tr. 20, 79-81, 96-98. He discussed the relevant evidence throughout the decision and clearly explained that the opinions were consistent with the evidence of record, much of which the psychologists considered and reviewed in rendering their opinions. Tr. 25-27, 73, 93. Furthermore, the ALJ had access to the entirety of the medical record, and it was his function to reconcile any evidentiary discrepancies within his discretion. *See* 20 C.F.R. § 404.1527(d)(2); *see also Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) ("Here, the ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination.") (citing *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3. (2d Cir. 2021).

Moreover, to the extent the ALJ failed to discuss supportability, any error was harmless, as the evidence is sufficient to permit the Court to glean the rationale of the ALJ's decision. *Petrie*, 412 F. App'x at 407) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); *Gladney v. Astrue*, No. 12-cv-6423P, 2014 WL 3557997, *10 (W.D.N.Y. 2014) (even where ALJ could have more fully articulated the basis for his conclusion, any such failure was harmless, where it was "possible to glean the ALJ's rationale" from a review of the entire decision). Thus, Plaintiff's contention that the ALJ's failure to discuss the supportability of Dr. Matyi and Dr. Waggoner's opinions warrants remand is meritless.

Plaintiff's contention that the ALJ was not permitted to find the state agency consultants' prior administrative findings more persuasive than Dr. Rubai's opinion is likewise meritless. The opinion of a consultative examiner may constitute substantial evidence in support of an ALJ's decision, *Monguer v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983), and state agency consultants are highly qualified experts in Social Security disability evaluations, whose opinions can constitute substantial evidence in support of an RFC, *Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015). *See also* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.").

Furthermore, opinions from these sources can be given greater weight than those of treating providers as long as the ALJ properly considers the opinions, which the ALJ clearly did here. *See Camille v. Colvin*, 652 F. App'x 25, 27-28 (ALJ properly credited a State agency consultant's opinion over the plaintiff's treating physician's opinion because the former was more consistent with the record); *see also Marc W.*, 2021 WL 2435651, at *6 (rejecting plaintiff's argument that the ALJ committed legal error by crediting the State agency medical consultant over a treating practitioner). Moreover, as discussed above, for claims filed on or after March 27, 2017, such as Plaintiff's claim, no opinions, including from treating sources, are entitled to any deference or specific evidentiary weight. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Here, Plaintiff has not met his burden of proving that he was disabled and/or more restricted than the ALJ's RFC finding. As explained above, the ALJ's RFC finding was sufficiently detailed so as to permit the Court to glean the rationale of the ALJ's decision. *Petrie*, 412 F. App'x at 407; *Monguer*, 722 F.2d at 1040); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Because the

ALJ's decision was supported by substantial evidence, and Plaintiff has failed to produce evidence showing that he had a more restrictive RFC than found by the ALJ, as was his burden, the Court finds no error. *Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018).

### 2. The ALJ Properly Considered Plaintiff's Subjective Complaints.

Plaintiff next argues that the ALJ's credibility finding[6] was flawed because the ALJ did not adequately consider the impact of Plaintiff's work history. *See* ECF No. 18 at 28-29. However, contrary to Plaintiff's argument, the ALJ properly assessed Plaintiff's subjective complaints in the context of the entire record, not just his work history. 20 C.F.R. § 404.1529 (c)(1)-(2); SSR 16-3p, 2017 WL 5180304. While an ALJ must take Plaintiff's claims into account, he need not accept subjective complaints without question. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ exercises discretion in weighing the consistency of Plaintiff's allegations in light of the other evidence in the record. *Id*.

If a claimant's symptoms suggest a greater restriction than demonstrated by objective evidence, the ALJ considers various factors, including daily activities, the duration, frequency, and intensity of his symptoms and the type of treatment he has received. 20 C.F.R. § 404.1529 (c)(3); SSR 16-3p. Review of an ALJ's subjective symptom evaluation is limited to determining whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2012) (Because it is the function of the Commissioner and not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, the Court will defer to the ALJ's determination as long as it is supported by substantial evidence).

---

[6] The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment. Recent guidance has clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

Here, the ALJ reasonably determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons the ALJ explained throughout the decision. Tr. 27-28. Thus, the ALJ accepted Plaintiff's statements only to the extent that his allegations could reasonably be accepted as consistent with the objective medical and other evidence. *Id*. Here, the evidence did not support Plaintiff's contentions statements about the intensity, persistence, and limiting effects of his impairments to the degree alleged. *Id*.

In addition to considering the inconsistency of Plaintiff's statements with the other evidence (Tr. 20-28), the ALJ also summarized Plaintiff's subjective statements, including his testimony, that he could not focus for long periods, had trouble with memory and forgetfulness, was anxious and restless around others which increased his stress levels, that he had difficulty interacting with authority figures, had reduced motivation to maintain hygiene, and had reduced energy levels. Tr. 20-21, 213-20. The ALJ then contrasted these allegations with other statements and evidence in the record. Tr. 27-28. As the ALJ explained, Plaintiff's allegations are inconsistent with other statements in the record, and with his activities of daily living. *See Monroe*, 676 F. App'x. at 9 (finding the ALJ could rely on Plaintiff's activities of daily living to formulate the RFC assessment). For instance, Plaintiff's testimony that he could not be around others is belied by his participation in amateur hockey, his ability to attend professional sporting events, go shopping, drive, and interact with family members during family function. Tr. 26-27, 46-48, 51-52, 498, 507, 513, 931. Plaintiff was also able to go on vacation, attend group fitness classes, and regularly go to the YMCA gym. Tr. 772, 778, 780, 994, 1012, 1030, 1038.

The ALJ also considered that Plaintiff's statements that he had memory problems are inconsistent with his ability to accurately detail his medical and mental health history with only minimal need for redirection; manage his healthcare, including contacting providers at his treatment center; drive; and manage money. Tr. 27-28, 48-51, 491, 507, 550, 679-80, 701, 761-62, 841, 909, 1049, 1020. *See Susan M. F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1073 (WBC), 2021 WL 2268825, at *6 (W.D.N.Y. June 3, 2021) ("the ALJ also properly relied on Plaintiff's ability to perform activities of daily living which supported the ALJ's RFC finding; *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that Plaintiff's activities of daily living were an important indicator of her true level of both physical and mental functioning). Plaintiff reported that she lived alone, shopped biweekly, drove, and prepared easy meals.").

Furthermore, as discussed above, Plaintiff worked part time as a support worker at a VA group facility. Tr. 27-28, 46-48, 57-58, 674, 763, 913. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done [during a period of claimed disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *see also Silva v. Saul*, No. 18-CV-6206 CJS, 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) (collecting cases) (explaining that an "ALJ may also properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled"); *Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184-FPG, 2014 WL 7359027, at *19 (W.D.N.Y. Dec. 23, 2014) (ALJ properly discredited the claimant's allegations in part because the claimant had worked after his alleged onset date).

Moreover, the ALJ did not ignore Plaintiff's work history. Tr. 28. Rather, the ALJ discussed Plaintiff's work history throughout the decision, making it clear that he was well-aware of Plaintiff's work history. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (94 (noting that the ALJ was well-aware of the claimant's good work history and holding that the ALJ's failure

to specifically mention it in the decision did not undermine the subjective allegations analysis). Here, as shown above, regardless of Plaintiff's prior work history, the ALJ discussed other pertinent factors in finding Plaintiff's subjective allegations not entirely consistent with the record as a whole. Based on the foregoing, the ALJ's factual findings regarding Plaintiff's subjective claims were supported by substantial evidence. As such, remand is not warranted.

### B. The ALJ Properly Addressed Plaintiff's Challenges to the VE Testimony and Reasonably Relied on the VE Testimony in Finding Plaintiff Not Disabled.

Plaintiff additionally contends that the ALJ committed reversible error by not addressing his post-hearing submissions objecting to the VE testimony. *See* ECF No. 18 at 3-15. In a Memorandum of Law Regarding Vocational Testimony dated December 17, 2019 (the "Memorandum"), Plaintiff contends that the VE testimony was "surprise testimony" entitling him to a supplemental hearing. Tr. 275. After considering the Memorandum and the issues raised therein, the ALJ found that a supplemental hearing was unlikely to produce any additional material evidence and, therefore, denied Plaintiff's request for a supplemental hearing. Tr. 12.

Plaintiff asserts that the ALJ did not discuss his objection to the DOT's classification of two of the jobs as unskilled, arguing that the jobs are no longer classified by a Specific Vocation Profile ("SVP") of 2. *See* ECF No. 18 at 8-13. Plaintiff also objects to the ALJ and VE's reliance upon the DOT, arguing that the publication is outdated. *See id*. at 7-8. First, contrary to Plaintiff's assertions, the ALJ explicitly addressed Plaintiff's objections to the VE's testimony in the decision. Tr. 12-14, 28-29. Spanning two pages of the decision, the ALJ explained in thorough detail why he denied Plaintiff's objections.

In response to Plaintiff's contention that the VE testimony was "surprise testimony," the ALJ explained that Plaintiff had multiple avenues to obtain the time and information necessary to address the VE testimony, but Plaintiff failed to employ any of these measures before or during

the hearing. Tr. 12. For instance, Plaintiff could have requested the materials to be relied upon by the VE via a subpoena pursuant to the SSA's Hearings, Appeal and Litigation Law Manual ("HALLEX") I-2-5-78. *Id*. Plaintiff also could have requested a recess after the VE testimony to prepare an examination of that testimony on the record. *Id*. Plaintiff also had the ability to produce his own expert to provide an opinion regarding job numbers; in fact, Plaintiff obtained the services of such an expert after the hearing as evidenced by the report attached to the Memorandum. *Id*.

The ALJ also noted that Plaintiff's objection is inconsistent with the events of the hearing. Tr. 13. As the ALJ recounted, Plaintiff's representative questioned the VE extensively, and after concluding these questions, the representative was provided an opportunity to question the VE on any other matters relevant to Plaintiff's case. *Id*. However, Plaintiff's representative declined to pursue further questions. *Id*. Thus, as the ALJ properly determined, Plaintiff is not entitled to a supplemental hearing simply because Plaintiff's representative failed to present questions at the hearing. Tr. 12-13 (citing HALLEX I-3-3-2; SSR 13-1p; T5. 58-66). As the ALJ also noted, Plaintiff failed to cite to any source supporting his argument and failed to produce any Agency rule, regulation, statute or case law even implying that VE testimony constituted surprise testimony. Tr. 12-13. Accordingly, the Court finds no error in the ALJ's decision to reject Plaintiff's proposition that he was entitled to a supplemental hearing based on Plaintiff's "mere *ipse dixit*." Tr. 13.

Furthermore, the ALJ explained that even assuming such an inconsistency exists, the presence of inconsistencies between occupational evidence and the DOT does not necessarily require a supplemental hearing as "substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." Tr. 13-14 (internal citations omitted). Indeed, the Commissioner's regulations provide that when the adjudicator determines that unskilled jobs exist in the national economy, he will take administrative notice of reliable job information

available from governmental and other publications, such as the DOT, published by the Department of Labor; County Business Patterns, published by the Bureau of the Census; Census Reports, also published by the Bureau of the Census; Occupational Analyses, prepared for the Social Security Administration by various state employment agencies; and Occupational Outlook Handbook, published by the Bureau of Labor Statistics. 20 C.F.R. § 404.1566(d)(1).   The regulations further provide that administrative notice is given first and foremost to the DOT (*see id*.), upon which the VE and ALJ in this case properly relied. Tr. 29.

Just as Plaintiff provides no support for his proposition that the VE testimony constituted surprise testimony, Plaintiff similarly has not pointed to any cases from within the Second Circuit holding that an ALJ's or VE's reliance on the DOT was inappropriate. On the contrary, courts in this Circuit have rejected the argument that the DOT is obsolete. *See, e.g., Strong v. Berryhill*, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019) (holding that, unlike the DOT, O*NET [Occupational Information Network] is not an approved vocational source, nor one with which the VE's testimony must be consistent); *Dennison v. Berryhill*, 2019 WL 2088506, at *9 (W.D.N.Y. May 13, 2019) (upholding VE's reliance on the DOT's description of jobs as unskilled, rather than O*NET's description of the same jobs as semi-skilled, because the DOT remains an acceptable basis for vocational opinion even though it has not been updated in more than 25 years); *Ryan v. Astrue*, 650 F.Supp.2d, 207, 218 (N.D.N.Y. 2009 ("Even if the VE's testimony was in conflict with O*NET, there is no requirement that the VE's testimony comply with that database. Instead, the VE's testimony must comply with the DOT); *see also Allen o/b/o Allen v. Comm'r of Soc. Sec.*, No. 5:16-CV-1207 (WBC), 2017 WL 6001830, at *7 (N.D.N.Y. Dec. 4, 2017) (noting that plaintiff's argument that the DOT is outdated is "interesting but must fail" because "[u]nder the Regulations, an ALJ can take administrative notice of job data from "various governmental and other publications" including the DOT) (citing 20 C.F.R. § 416.966(d)(1)).

Here, the VE identified three representative occupations available in significant numbers in the national economy for someone with Plaintiff's vocational profile and RFC. Tr. 29, 60-61. The VE relied upon the DOT descriptions of the representative jobs she identified, and stated that she derived her data, in part, from the U.S. Bureau of Labor Statistics. *See* Tr. 59, 61, 63. The VE also relied on her job knowledge and experience regarding Plaintiff's capacity to work in the representative jobs with the limitations assessed to formulate the job incidence data provided. *See* Tr. 60-61, 263. *See* 20 C.F.R. § 404.1566(e). Even without producing survey data, a VE's testimony may be "the kind of evidence—far more than a mere scintilla—that a reasonable mind might accept as adequate to support a finding about job availability") *Biestek v. Berryhill*, 139 S.Ct. 1148, 1156 (2019) 1155 (internal quotations and citations omitted); *see also McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (finding that ALJ reasonably credited VE testimony, which was given on the basis of his professional experience and clinical judgment, and which was not undermined by any evidence in the record); *Dugan v. Soc. Sec. Admin., Com'r*, 501 F. App'x 24 (2d Cir. 2012), (affirming ALJ's reliance on VE testimony where expert declined to release labor market surveys).

Furthermore, contrary to Plaintiff's argument (*see* ECF No. 18 at 6), the ALJ did not err by rejecting the report from vocational counselor Mark L. Heckman ("Mr. Heckman"), or by rejecting Mr. Heckman's conclusion that "a limitation of occasional interaction with coworkers and supervisors as in the ALJ's RFC precludes all work." Tr. 278). The Court finds no basis to conclude that the ALJ was required to accept Mr. Heckman's report. *See Johnson v. Berryhill*, No. 17CV6463P, 2018 WL 4275985, at *12 (W.D.N.Y. September 7, 2018) (finding that the ALJ did not err in rejecting similar vocational report); *see also Bryson v. Comm'r of Soc. Sec.*, No. 1:20-CV-1137, 2021 WL 2735993, at *19 (N.D. Ohio June 10, 2021), *report and recommendation adopted*, No. 1:20-CV-01137, 2021 WL 2720071 (N.D. Ohio July 1, 2021) (listing numerous

courts which have also rejected vocational reports authored by Mr. Heckman at the behest of Plaintiff's counsel); *Luna v. Soc. Sec. Admin.*, No. 1:19-CV-1414, 2020 WL 5549318, at *16 (N.D. Ohio Aug. 28, 2020), *report and recommendation adopted sub nom. Luna v. Comm'r of Soc. Sec.*, No. 1:19CV1414, 2020 WL 5544379, at *1 (N.D. Ohio Sept. 15, 2020) (rejecting vocational report authored by Mr. Heckman stating the same conclusion). Furthermore, the SSA has not adopted the position that an individual with a limitation to only occasional contact with supervisors is *per se* precluded from work, as Plaintiff suggests. *See generally Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51 (2d Cir. 2016) (work available to claimant limited to occasional interaction with coworkers and supervisors); *Lynn v. Colvin*, No. 15CV6665L, 2017 WL 743731, at *3 (W.D.N.Y. Feb. 27, 2017) (work available to claimant limited to superficial interaction with co-workers and supervisors, and no interaction with the public).

As the ALJ reasonably concluded, because the DOT indicates that all three jobs are unskilled, and because the ALJ may give administrative notice to its data, the jobs identified by the VE were unskilled work. Tr. 28-29. At step five, the Commissioner must merely "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy" that a claimant could perform. 20 C.F.R. § 404.1560(c)(2). The rough estimate of job numbers given by a VE based on his or her experience is sufficient to satisfy the applicable regulations, and the ALJ was justified in relying on the VE's experience-based estimates of the number of jobs in each cited occupation. Thus, the Court finds no error.

### C.  Plaintiff's Constitutional Arguments Fail.

Relying on *Seila Law LLC v. Consumer Fin. Prot. Bureau ("CFPB")*, 140 S. Ct. 2183 (2020) ("*Seila Law*"), Plaintiff argues that his claim for disability benefits was decided under an unconstitutional delegation of authority to the ALJ. *See* ECF No. 18 at 29-32. In *Seila Law*, the Supreme Court held that the authority of the CFPB director, who was removable by the President

only for cause, violated constitutional separation of powers principles because the CFPB's director was vested with significant executive power and "who was neither elected by the people, nor controlled (through the threat of removal) by someone who is." *Seila Law*, 140 S. Ct. at 2203.

The Social Security Act describes the "Commissioner of Social Security" as an individual "appointed by the President" and confirmed by the Senate. 42 U.S.C. § 902(a). The Commissioner is appointed to a term of six years, and "[a]n individual serving in the office of Commissioner may be removed from office" only for cause. 42 U.S.C. §902(a)(3). In a separate subsection, the statute addresses the "Deputy Commissioner of Social Security," who enjoys no removal protection, and is deemed the "Acting Commissioner" during the "absence or disability of the Commissioner . . . unless the President designates another officer of the Government as Acting Commissioner." 42 U.S.C. § 902(b)(2), (4). The ALJ who adjudicated Plaintiff's claim on January 10, 2020 held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Nancy Berryhill ("Ms. Berryhill"). Ms. Berryhill had been designated to serve as Acting Commissioner in April 2018, upon former President Trump's nomination of Andrew Saul ("Mr. Saul") to serve as Commissioner.

Plaintiff alleges that the structure of the SSA is identical to that of the CFPB, because the Commissioner is the singular head of the Agency, serves for six years, and cannot be removed by the President except for cause ("neglect of duty or malfeasance in office"), 42 U.S.C. § 902(a)(3), making SSA's structure unconstitutional under *Seila Law*, as it violates separation of powers. *See* ECF No. 18 at 29. Accordingly, argues Plaintiff, former Commissioner Saul's delegation of authority to the ALJ and the Appeals Council was unconstitutional, rendering the adjudication of Plaintiff's claim for disability benefits likewise unconstitutional and  depriving him of a valid administrative adjudicatory process. *See* ECF No. 18 at 29-32.

In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court confirmed that, based on the application of *Seila Law*, the President's inability to remove the Director of another federal agency—the Federal Housing Finance Authority ("FHFA")—at will was unconstitutional, as it violated the separation of powers.  Even though *Collins*, similar to *Seila Law*, did not discuss the statutory tenure protection of the Commissioner of SSA, the SSA was mentioned by Justice Kagan, who noted in her concurring opinion that "[t]he SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block." *Collins* at 1802.

In support of his argument, Plaintiff also cites another Supreme Court decision, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), which involved an unconstitutional appointment of an ALJ in a matter before the Securities and Exchange Commission ("SEC"). *See* ECF No. 18 at 31. In *Lucia*, the Supreme Court held that ALJs from the SEC are "inferior officers" who must be appointed pursuant to the Appointments Clause of the United States Constitution. *See Lucia*, 138 S.Ct. at 2051-66. The Court went on to hold that a party "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief. *Id*. at 2055 (citation omitted). The remedy for the unconstitutional appointment by SEC staff members was a new hearing before a properly appointed ALJ.  *Id*. at 2055. Thus, Plaintiff argues that the appropriate remedy for the alleged unconstitutional appointment in his case is a new hearing before a properly appointed ALJ. *See* ECF No. 18 at 31. However, the Supreme Court's decisions in *Seila Law*, *Collins*, and *Lucia* do not support Plaintiff's arguments.

The Supreme Court distinguished the facts of *Collins* from those of *Lucia*, which "involved a Government actor's exercise of power that the actor did not lawfully possess."  *Collins*. at 1788 (citation omitted). The Court found no basis to conclude "that any head of the FHFA lacked the authority to carry out the functions of the office."  *Id*. The Court further explained: "[s]ettled

precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office, including implementing the [challenged act.]" *Id*. at 1788 n. 23 (citing *Seila Law*, 140 S. Ct. at 2207–2211).

In July 2021, following *Seila Law* and *Collins*, the U.S. Department of Justice issued a Memorandum Opinion, in which it agreed that 42 U.S.C. § 902(a)(3) violated the separation of powers to the extent it limited the President's authority to remove the Commissioner of Social Security at will. *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542, at *7 (O.L.C. July 8, 2021) ("We believe that the best reading of those decisions compels the conclusion that the statutory restriction on removing the Commissioner is unconstitutional. Therefore, the President may remove the Commissioner at will."). However, the Memorandum Opinion also states as follows: "The conclusion that the removal restriction is constitutionally unenforceable does not affect the validity of the remainder of the statute." *Id*. at 1. In this regard, the Court notes that 42 U.S.C. section 902 indicates that the Commissioner is appointed by the President "with the advice and consent of the Senate." 42 U.S.C. § 902(a)(1). Furthermore, Section 902(a)(7) gives the Commissioner the authority to "assign duties, and delegate, or authorize successive redelegations of, authority to act and to render decisions, to such officers and employees of the Administration as the Commissioner may find necessary." Thus, the Memorandum Opinion agrees with *Collins* that this latter section on the delegation of authority remains valid.

The Commissioner argues that Plaintiff cannot show the required nexus between Section 902(a)(3)'s removal restriction and the denial of his claim for benefits as required under *Collins*. Further, argues the Commissioner, §902(a)(3) does not apply because the ALJ who adjudicated Plaintiff's case was appointed by Ms. Berryhill in her capacity as Acting Commissioner. An Acting Commissioner, the Commissioner asserts, is an at-will employee who serves at the behest of the President and therefore, enjoys no statutory tenure protection. *See* ECF No. 21 at 8-10 (citing 42

U.S.C. § 902(b)(4); *Collins*, 141 S. Ct. at 1783.  As such, argues the Commissioner, Ms. Berryhill was removable at will, and her ratification of the deciding ALJ's appointment accordingly severed any conceivable nexus between Section 902(a)(3)'s tenure protection for a confirmed Commissioner and any alleged harm to Plaintiff. Therefore, argues the Commissioner, there is no nexus between the harm Plaintiff alleges, an illegitimate administrative adjudication, and §902(a)(3), and thus, Plaintiff cannot receive a new hearing. *See* ECF No. 21 at 8-10.

Plaintiff argues that the Commissioner's arguments fail because Plaintiff's challenge has nothing to do with whether an ALJ was appointed by a Commissioner or an Acting Commissioner, but rather, the constitutional violation results from the improperly appointed Commissioner's delegation of authority to the ALJ and/or the Appeals Council. *See* ECF No. 22 at 7. As a result, Plaintiff argues, his "constitutional rights were violated by several government actors who exercise power they did not lawfully possess." *See id*. Plaintiff also argues that causation and harm should be presumed in his case. *See id*. Additionally, argues Plaintiff, *Collins*, as well as *Carr v. Saul*, 141 S. Ct. 1352 (2021), support his argument that harm and causation should be presumed in cases such as this. *See* ECF No. 22 at 7-8. Plaintiff's arguments are unpersuasive.

The Commissioner counters that, even if §902(a)(3) applied to an Acting Commissioner, Plaintiff's claim still fails because he cannot show that §902(a)(3) inflicts compensable harm on him. *See* ECF No. 21 at 10-11. Under *Collins*, the Commissioner asserts that the ALJ's actions are not voided because Plaintiff has failed to show that §902(a)(3) has caused a denial of his benefits. *See id*. (citing *Collins* at 1789).

As outlined above and as explained by the Supreme Court in *Seila Law* and *Collins*, the specific sections of the governing removal statutes that violated separation of powers in these cases were separate and severable from other provisions governing the operations of the CFPB and the FHFA. Thus, unconstitutional for-cause removal challenges alone will not automatically serve to

invalidate the ALJ's decision. *See Collins*, 141 S. Ct. at 1788–89. The unconstitutional provision

must have caused "compensable harm." *See Collins*, 141 S. Ct. at 1789. As the majority explained

in *Collins*, while *Seila Law* was "all but dispositive" on the removal question, it does not dictate

that the Court should invalidate as unconstitutional the challenged decision or act. *Collins*, 141 S.

Ct. at 1783. Importantly, the *Collins* court explained the difference between what is sufficient to

show standing and what is sufficient to show entitlement to relief:

> What we said about standing in *Seila Law* should not be misunderstood as a holding
> on a party's entitlement to relief based on an unconstitutional removal restriction.
> We held that a plaintiff that challenges a statutory restriction on the President's
> power to remove an executive officer can establish standing by showing that it was
> harmed by an action that was taken by such an officer and that the plaintiff alleges
> was void. But that holding on standing does not mean that actions taken by such an
> officer are void *ab initio* and must be undone.

*Collins*, 141 S. Ct. at 1788 n. 24 (internal citations omitted).

Although the Supreme Court in *Collins* did indicate that it was possible for a party to

establish "compensable harm" based on a separation of powers violation in a removal statute, the

Court also held that the "compensable harm" would have to have a direct nexus to a separation of

powers violation. *Id*. at 1788-89. Here, the Court finds no conceivable direct nexus between the

ALJ's adjudication of Plaintiff's disability claim and the alleged separation of powers violation in

the removal statute that applies to the Commissioner. As discussed above, the ALJ's opinion was

well-reasoned, contained no harmful legal error, considered the entire record, and was supported

by the record. Beyond arguing a constitutional taint flowing from §902(a)(3), Plaintiff fails to point

out which, if any, defective regulations were promulgated in this case, how they applied to his

claim, and how they affected the outcome such that he suffered a compensable harm. While it is

conceivable that this constitutional defect could cause compensable harm, Plaintiff here has not

shown that connection. Plaintiff's allegations merely amount to general dissatisfaction with the

outcome of the adjudication of his claim.

34

For the reasons detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 17) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE